to the complaint, grant leave to amend, and for further proceedings.

---•◆•---

## ZEEK v. REED.

WILL —*Devise for Support of Devisee —Interest.— Conversion.— Setting aside Exec tor's Final Report.*—By the terms of his will, a testator devised to a married daughter a specified sum of money, " to be paid to her at such times and in such sums as she may be in need of it ; but put it not into the hands of her husband, as I will it to be kept clear from all his claims."

*Held,* in an action by the devisee, against the executor, that, on his conversion of the estate into money, she became entitled to receive of him all of the legacy necessary to supply her reasonable needs ; that he was liable to her for interest received by him thereon ; and that his final settlement report could be set aside to compel him to account for such interest.

From the Wayne Circuit Court.

*B. F. Harris* and *T. J. Study*, for appellant.

*J. P. Siddall* and *W. D. Foulke*, for appellee.

HOWK, C. J.—This was a suit by the appellant, against the appellee, in a complaint of a single paragraph, to which complaint the appellee demurred, for the first, fourth, fifth and sixth statutory causes of demurrer. The court sustained this demurrer, but whether for all, or for one or more, of the said causes of demurrer, the record fails to show. To the decision of the court, in sustaining said demurrer, the appellant excepted, and, refusing to plead further, judgment was rendered against her for the appellee's costs. From this judgment the plaintiff below has appealed to this court, and has here assigned as error the decision of the circuit court in sustaining the appellee's demurrer to her complaint.

This complaint is very long, but we deem it necessary to a proper presentation of the question we are required to decide, and of our decision of that question, that we should give a summary, at least, of the material facts alleged therein and constituting the appellant's supposed cause of action.

In 1858 one Silas Bond died testate, and after his death, on the 4th day of March, 1858, his last will and testament was duly admitted to probate in the court of common pleas of Wayne county, Indiana, and a copy of said will was filed with and made part of the appellant's complaint. The appellant was a daughter of said Silas Bond, and one of the legatees named in his will. That part of the testator's will which gave the appellant her legacy reads as follows:

"*Tenthly.* I give and bequeath to my daughter Lydia seven hundred and fifty dollars, to be paid to her at such times, and in such sums, as she may be in need of it; but put it not into the hands of her husband, as I will it to be kept clear from all his claims."

Afterward, in 1858, the appellee, having been nominated in the will, gave bond and qualified as executor of the testator's will. By reason of an allowance to the testator's widow, the appellant's legacy of $750.00 was reduced to the sum of $610.00. On or about the 25th day of April, 1859, the said sum of $610.00, being then and there appellant's property, came into the hands of the appellee as such executor. Small sums were paid to the appellant, by the appellee, to wit, in 1861, $34.; in 1862, $36; and in 1863, $40; making a total sum, in those three years, of $110. In 1864, the appellee had in his hands, as such executor, the sum of $500, being the balance of the appellant's legacy, which sum she then requested the appellee to invest in the purchase of a house and six acres of land as a home for herself and her two children; but he refused to make such investment for such purpose. At that time, and for some years after-

ward, the appellant was very poor and greatly in need of the necessaries of life, and made demands of the appellee for money to supply her reasonable wants, but he refused to pay her such money. The other legatees named in the will were fully paid their legacies within two years after the grant of letters testamentary on the will, while the appellant had been kept out of her legacy by the appellee's fraudulent and wrongful acts, for fifteen years. The appellee had loaned the appellant's money, and had received interest thereon at the rate of ten per cent. per annum, to the amount of $750.00, and had wrongfully and fraudulently withheld said interest and refused. to pay it to the appellant or to account therefor to the court. The appellee had mingled the appellant's money with his own funds, and appropriated the profits to his own use, and had invested her funds, and appropriated the profits thereof to his own use, and had not accounted to her nor the court therefor. On the 29th day of March, 1869, the appellee, as executor, upon his affidavit filed, moved the court for further time in which to make his settlement of said estate, for the alleged reason that he was not to pay out all the money in his hands under said will for about eight years, and reports, in the meantime, would be useless and expensive. This affidavit was fraudulent and untrue, and was made for the purpose of cheating and hindering the appellant in getting her legacy. Afterward, at the February term, 1875, of the court, the appellee, as executor, made his final settlement report, and was discharged. Neither in that report, nor in any prior report, did the appellee charge himself with the said interest so received by him on the appellant's money. The said estate consisted of both· real and personal property, the whole of which was reduced to money in 1860; and, from that time until his said final report, the appellee had loaned the appellant's money at the rate of ten per cent. per annum, and had appropri-

ated the interest to his own use. The said final settlement report was illegal, fraudulent and void, by reason of its not showing the amount received by the appellee as interest on the appellant's legacy, and for not accounting to the court or to the appellant for said interest. The appellant prayed the court to set aside said final settlement report, and that the appellee, as such executor, might be required to make a fair and honest showing of the amount of funds that came into his hands as executor, belonging to the appellant, and to pay the same over to her, etc.

We are of the opinion, that the court erred in sustaining the appellee's demurrer to the appellant's complaint. By the terms of his last will, the appellant's father evidently intended that his daughter Lydia should have and receive out of his estate, without doubt or contingency of any kind, the sum of money which he gave and bequeathed to her in the tenth item of his will. The money was to be paid " at such times and in such sums as she might be in need of it." It was alleged in the complaint, that, in 1860, the whole of the testator's estate, real and personal, out of which the appellant's legacy was to be paid, had been reduced to money. Whenever, thereafter, the fact existed, that she was in need of the whole or any part of her said legacy, not to keep her from starvation, but to supply her reasonable wants, considering her sex and situation in life, we think that she then became entitled to demand and receive from the appellee so much of her said legacy as she was thus in need of, and that he was not authorized to withhold the . same from her by any of the provisions of the will. If the allegations of the complaint were true, and the appellee's demurrer thereto conceded their truth, the payment to the appellant of her said legacy would seem to have been unjustly and unreasonably withheld; for she alleged that she was very poor and greatly in need of the necessaries of life, and made demands of the appellee for money to

supply her reasonable wants, but he refused to pay her such money. Such refusal was in direct violation of the express terms of the will.

But it is further alleged in the complaint, that the appellee had loaned out the money which had been given and bequeathed to her, and which, by the terms of the will and under the facts stated, had become of right her money, and had received a large sum of money as interest thereon, and that he had mingled said money with his own funds and appropriated the profits thereof to his own use, and that he had never accounted either to the court or to the appellant for such interest and profits. These allegations of the complaint, as the case comes before this court, must be taken as true; and it seems to us, they clearly show that the appellee had used the moneys in his hands, belonging to the appellant, for his own personal gain and profit, and this the law will neither authorize nor justify. As it is alleged in the complaint that the appellee had made his final settlement report, and obtained his discharge, as executor of the testator's estate, without having ever accounted, in any manner, for the interest, gains and profits so received by him, either to the court or to the appellant, and as the truth of this allegation is also admitted by the appellee's demurrer, we are of the opinion, that such final settlement report must be regarded as illegal and fraudulent, as against the appellant, and that the same ought to be and must be revoked and set aside, if, upon the hearing, the allegations of the complaint should be sustained by sufficient evidence. 2 R. S. 1876, p. 537, sec. 116; *Miller* v. *Steele*, 64 Ind. 79. As we read the complaint, it was a mistake on the appellee's part to meet its allegations of fact with a demurrer thereto for the want of facts; but, however, this may have been, we think that the appellee's demurrer to the complaint ought to have been overruled.

The judgment is reversed, at the appellee's costs, and

the cause is remanded, with instructions to sustain the demurrer to the complaint and for further proceedings.