**VILLAGE OF COLLEGE CORNER, Ohio and Board of Public Affairs, Village of College Corner, Ohio, Appellants–Defendants,**

v.

**TOWN OF WEST COLLEGE CORNER, Indiana, Appellee–Plaintiff.**

No. 81A04–0110–CV–424.

Court of Appeals of Indiana.

April 23, 2002.

F. Harrison Green, F. Harrison Green Co., L.P.A., Cincinnati, OH, Gregory B. Smith, Smith & Smith Law Offices, Muncie, IN, Attorneys for Appellants.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants, Village of College Corner, Ohio (College Corner) and Board of Public Affairs, Village of College Corner, Ohio (hereinafter collectively referred to as "the Village"), appeal the trial court's grant of summary judgment in favor of Appellee, Town of West College Corner, Indiana (the Town).

We reverse.

### ISSUE

The Village raises two issues on appeal, which we consolidate and restate as follows: whether the trial court erred in granting summary judgment in favor of the Town.

### FACTS AND PROCEDURAL HISTORY

On October 24, 1996, the Town filed a Suit on Account against College Corner in the Union Circuit Court. The Suit on Account alleged that College Corner "has failed to pay the full required sewage treatment user fee and now owes Plaintiff [the Town] the sum of eighteen thousand nine hundred twenty-seven dollars ($18,-927) as of October 1, 1996, which amount is wholly due and unpaid." (Appellants' App. A). On November 18, 1996, College Corner filed a Notice of Removal and a Motion to Stay Action, asserting that the United States District Court for the Southern District of Ohio had jurisdiction based on the parties' diversity of citizenship. Also on November 18, 1996, College Corner filed a

separate action in federal court against the Town, "alleging claims that arise out of the same contract between the parties." (Appellants' App. D). On December 11, 1996, the Town moved to remand both cases. On May 28, 1997, the federal court granted the motion as to the original suit, but it retained jurisdiction of College Corner's claims against the Town.

On July 14, 1997, the Town filed a Motion for Default Judgment against College Corner in the Union Circuit Court. The trial court denied the motion on August 2, 1999. On July 21, 1997, College Corner filed a Motion to Dismiss against the Town. The trial court denied the motion on September 20, 1999.

On August 16, 1999, the Village [1] filed its Answer, Counterclaims and Cross–Claims. The Village designated seven (7) causes of action for which it sought relief, which are stated as follows: temporary and preliminary injunctive relief, breach of contract (nuisance), nonperformance of contract conditions, abuse of process, malicious prosecution, trespass, and misrepresentation and bad faith. On September 22, 1999, the Town filed its Answer to Counterclaim and Cross–Claim. On November 12, 1999, the Town filed its Amended Answer and Affirmative Defense to Counterclaim and Cross–Claim. In its amended answer, the Town, by way of an affirmative defense, asserted that "it has never received notice of any claimed loss by either the Village of College Corner, Ohio or the Board of Public Affairs of the Village of College Corner, Ohio." (Appellants' App. O). The Town did not assert this defense in its original answer. On November 22, 1999, the trial court issued its Order Granting Leave to Amend Answer. Subsequently, the amend-ed answer was refiled on December 2, 1999.

Both the Town and the Village moved for summary judgment. The Town's motion was predicated upon the affirmative defense that the Village had not given notice pursuant to the Indiana Tort Claims Act (the ITCA) of the claims alleged in its Answer, Counterclaims and Cross–Claims. On June 4, 2001, a hearing was held. The trial court noted that the original basis for the lawsuit (i.e., claims of the Town for sewage fees from the Village) had been resolved by an agreement between the officials of the two (2) communities, was adopted by the trial court, and culminated in payment of sewer fees by the Village to the Town. Thus, the trial court stated "[t]he remaining issues subject to the present motions are comprised of the claims in the Village's counterclaims and cross-claims filed in its answer August 16, 1999." (Appellant's App. J).

On June 13, 2001, summary judgment was granted for the Town and against the Village as to the causes of action in the Village's Answer, Counterclaims and Cross–Claims for breach of contract (nuisance), nonperformance of contract conditions, abuse of process, malicious prosecution, trespass, and misrepresentation and bad faith. Summary judgment was denied to all parties as to the issue of temporary and preliminary injunctive relief. In reaching its conclusion, the trial court reasoned, "[t]he Village has failed to comply with the Indiana Tort Claims Act with respect to the torts alleged.... Whether there is a necessity of injunctive relief to assure the Town's compliance with the parties['] contract remains an open issue." (Appellants' App. J).

The Village now appeals.

---

**1.** At this point, the Board of Public Affairs, Village of College Corner, Ohio also became a party to this action.

## DISCUSSION AND DECISION

The Village argues that the trial court erred in granting summary judgment in favor of the Town. Specifically, the Village argues that its failure to comply with the notice requirement of the ITCA does not foreclose its claims against the Town.

### I. *Failure to File a Brief*

■■■■ At the outset, we note that the Town did not file an appellee's brief. When an appellee does not submit a brief, an appellant may prevail by making a *prima facie* case of error. *Nat'l Oil & Gas, Inc. v. Gingrich*, 716 N.E.2d 491, 497 (Ind. Ct.App.1999). *Prima facie* in this context is defined as "'at first sight, on first appearance, or on the face of it.'" *Kentucky Truck Sales, Inc. v. Review Bd. of Indiana Dep't of Workforce Dev.*, 725 N.E.2d 523, 526 (Ind.Ct.App.2000) (quoting *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind.Ct.App. 1999)). Such a rule protects this court and relieves it from the burden of controverting arguments advanced for reversal, a duty which properly remains with counsel for the appellee. *Nat'l Oil & Gas, Inc.*, 716 N.E.2d at 497.

### II. *Summary Judgment*

In *Brunton v. Porter Memorial Hosp. Ambulance Service*, 647 N.E.2d 636, 638–39 (Ind.Ct.App.1994), this court held:

> The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. Ind.Trial Rule 56(C); *Fawley v. Martin's Supermarkets, Inc.* (1993), Ind.App., 618 N.E.2d 10, 12, *trans. denied.* The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact. T.R. 56(C); *Campbell v. Criterion Group* (1993), Ind.App., 613 N.E.2d 423, 428, *on reh'g* 621 N.E.2d 342. Once the moving party makes a prima facie showing of the non-existence of a genuine issue of material fact, the burden shifts to the non-moving party to set forth specific facts showing the existence of a genuine issue for trial. T.R. 56(E); *Campbell*, 613 N.E.2d at 428. Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Fawley*, 618 N.E.2d at 12.

On appeal, we are normally bound by the same standard as the trial court and we must consider all matters which were designated at the summary judgment stage in the light most favorable to the non-moving party. T.R. 56(C); *Campbell*, 613 N.E.2d at 428. However, the question of compliance with the ITCA is a "procedural precedent which the plaintiff must prove and which the trial court must determine prior to trial." *Hupp v. Hill* (1991), Ind.App., 576 N.E.2d 1320, 1323 (quoting *Indiana Dep't of Highways v. Hughes* (1991), Ind.App., 575 N.E.2d 676, 678; *Indiana State Highway Commission v. Morris* (1988), Ind., 528 N.E.2d 468, 471). Accordingly, a summary judgment based on the plaintiff's failure to comply with the notice provisions of the Act is "subject to review as [a] negative judgment[ ], which we will reverse only if contrary to law." *Id.* at 1323–1324.

### A. *Contract Claims*

■■■■ The Village argues that the trial court erred in granting summary judgment in favor of the Town with respect to the Village's claims of breach of contract (nuisance) and nonperformance of contract conditions. This court has held that "[t]he clear intention of this act [ITCA] was to set up a uniform body of law to govern the prosecution of tort claims, *and only tort claims,* against the State and other governmental entities, including counties."

*Gonser v. Bd. of Comm'rs for Owen County*, 177 Ind.App. 74, 78, 378 N.E.2d 425, 427 (1978) (emphasis added).

In its breach of contract (nuisance) claim, the Village maintained that the Town "has failed to duly and substantially perform its obligations of the master agreement for the treatment of sewer waste water." (Appellants' App. I). In its nonperformance of contract conditions claim, the Village argued that since the signing of the master agreement the Village "has repeatedly attempted to completely cooperate in the performance of the agreements and has stood ready, willing and able to assist in said performance, but Town has refused to take steps necessary to effectuate the necessary improvements in the performance of the sewer treatment plant." (Appellants' App. I). These claims clearly stem from the contract between the Town and the Village. These claims are not tort claims.

Accordingly, we find that the Village has made a showing of *prima facie* error. *See Nat'l Oil & Gas, Inc.*, 716 N.E.2d at 497. Therefore, we hold that the trial court erred in granting summary judgment in favor of the Town as to these claims, because the Village was not required to comply with the ITCA with respect to contract claims.

## B. *The ITCA*

The Village contends that the trial court erred in granting summary judgment in favor of the Town as to the remaining issues—abuse of process, malicious prosecution, trespass, and misrepresentation and bad faith. The Village recognizes that these claims are tort claims. Additionally, the Village admits that it did not give notice as required by the ITCA. However, the Village maintains that the trial court abused its discretion in allowing the Town to amend its answer, adding the affirmative defense of failure to provide notice as required by the ITCA. The Village also maintains that its counterclaims are saved by T.R. 13(J).

Ind. Code § 34–13–3–8, the ITCA notice requirement, provides:

(a) Except as provided in section 9 of this chapter, a claim against a political subdivision is barred unless notice is filed with:

(1) the governing body of that political subdivision; and

(2) the Indiana political subdivision risk management commission created under IC-27-1-29;

within one hundred eighty (180) days after the loss occurs.

(b) A claim against a political subdivision is not barred for failure to file notice with the Indiana political subdivision risk management commission created under IC 27–1–29–5 if the political subdivision was not a member of the political subdivision risk management fund established under IC 27–1–29–10 at the time the act or omission took place.

"No distinction is made between claims, counterclaims, or cross-claims in the ITCA. . . . Additionally, actual knowledge of the occurrence on the part of the political subdivision does not relieve a claimant of the duty to give notice of the claim." *Governmental Interinsurance Exch. v. Khayyata*, 526 N.E.2d 745, 746 (Ind.Ct. App.1988).

### 1. *Amended Answer*

The Village argues that the trial court abused its discretion when it allowed the Town to amend its answer, adding the affirmative defense of failure to provide notice as required by the ITCA. We disagree.

In *Barber v. Cox Communication, Inc.*, 629 N.E.2d 1253, 1258 (Ind.Ct. App.1994), *trans. denied, abrogated on*

*other grounds by Rausch v. Reinhold,* 716 N.E.2d 993 (Ind.Ct.App.1999), this court held:

> The policy generally is to liberally allow amendments of pleadings and leave to amend should be given unless the amendment would result in prejudice to the opposing party. *Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 420, 363 N.E.2d 985, 989. The trial court is vested with broad discretion in determining whether to permit amendments to pleadings. *Id.* Additionally, when a claim or defense asserted in the amended pleading arose out of an occurrence that had been set forth in the original pleading, the amendment relates back to the date of the original pleading. Ind. Trial Rule 15(C).

The Town did not assert its affirmative defense of failure to comply with the notice requirement under the ITCA in its original answer. Failure to give notice is a defense that a political subdivision must assert in its answer to a plaintiff's complaint. *Health & Hosp. Corp. of Marion County v. Gaither,* 272 Ind. 251, 254, 397 N.E.2d 589, 592 (1979). Nonetheless, as stated above, amended pleadings relate back to the original pleading when a claim or defense asserted in the original pleading arises out of an occurrence that had been set forth in the original pleading. *See Barber,* 629 N.E.2d at 1258. We have such a situation here.

The Village states that "the failure to assert the notice defense until long after the Village's claims were first asserted in federal court caused the Village to believe that it was not necessary to file a notice." (Appellants' Brief p. 10). The Village's argument is not well taken. What the parties did or did not do in federal court is not at issue here. Moreover, it is not relevant. The Town filed its Suit on Account against the Village in 1996. Almost three (3) years

later, the Village filed its Answer, Counterclaims and Cross–Claims. This is the first time, in state court, that the Town became aware of the Village's claims against it. The Town filed its original answer without asserting the notice requirement affirmative defense. Approximately one and one-half (1½) months later, the Town filed its amended answer, asserting the notice requirement affirmative defense. Ten (10) days later, the trial court issued its Order Granting Leave to Amend Answer. Shortly thereafter, the Town's amended answer was refiled.

We agree that the Town should have asserted its affirmative defense, regarding the Village's failure to comply with the notice requirement under the ITCA, in its original answer. However, the Village has not demonstrated that it was prejudiced by the trial court's Order Granting Leave to Amend Answer. As previously stated, the Town's knowledge of the Village's claims in federal court against it establishes nothing. Therefore, we cannot find that the trial court abused its discretion in allowing the Town to amend its answer, adding the affirmative defense of failure to provide notice as required by the ITCA. *See Barber,* 629 N.E.2d at 1258.

### 2. *T.R. 13*

It would appear that the Village committed a fatal error when it did not give notice as required by I.C. § 34–13–3–8. However, the Village directs our attention to T.R. 13, which provides, in pertinent part, as follows:

> (A) Compulsory counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of

whom the court cannot acquire jurisdiction. But the pleader need not state the claim if:

(1) at the time the action was commenced the claim was the subject of another pending action; or

(2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this rule.

. . .

(J) Effect of statute of limitations and other discharges at law. The statute of limitations, a nonclaim statute or other discharge at law shall not bar a claim asserted as a counterclaim to the extent that:

(1) it diminishes or defeats the opposing party's claim if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim, or if it could have been asserted as a counterclaim to the opposing party's claim before it (the counterclaim) was barred; or

(2) it or the opposing party's claim relates to payment of or security for the other.

Compulsory counterclaims must arise out of the same transaction or occurrence. *Daube and Cord v. LaPorte County Farm Bureau Co-op. Ass'n,* 454 N.E.2d 891, 892 (Ind.Ct.App.1983). The term "transaction" has been defined as " 'a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon their connection as upon their logical relationship.' " *Id.* at 892–93 (quoting *Moore v. N.Y. Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926)). The term "transaction" should be given a broad interpretation by courts in order to avoid multiple litigation. *Id.* at 893.

In *Khayyata, supra,* Khayyata collided with a Delaware County ambulance, which was on an emergency run in Muncie, Indiana. 526 N.E.2d at 745–46. Khayyata sustained property damage as a result of the collision. *Id.* at 746. The County's insurance carrier, G.I.E., investigated the accident and determined that Khayyata was at fault. *Id.* Her insurer denied liability and G.I.E.'s subrogation claim. *Id.* Neither Khayyata nor her insurer notified the County of a tort claim within 180 days of the accident. *Id.*

G.I.E. intentionally allowed the 180–day notice period to run before initiating its action against Khayyata. *Id.* Khayyata responded to the complaint by answer and counterclaim. *Id.* In her counterclaim, Khayyata alleged that the County's driver was negligent and that the County was liable for her loss based upon the doctrine of *respondeat superior.* *Id.* Thereafter, G.I.E. moved for summary judgment, arguing that Khayyata had failed to state a claim upon which relief could be granted because she did not give notice of her claim, pursuant to the ITCA. *Id.* The trial court denied G.I.E.'s motion for summary judgment. *Id.*

On appeal, G.I.E. maintained that under the ITCA, Khayyata was required to give notice to the County as to any claims she had against it. *Id.* This court held as follows:

We are of the opinion that because of the plain language of the statute here under consideration notice was required to be given by Khayyata and the failure to do so bars her claim. Even though a counterclaim was used by her to pursue her loss, it was a claim nonetheless and subject to the notice provision of the ITCA. The direct language of the statute allows no other construction.

However, we are of the further opinion that Ind. Rules of Procedure, Trial Rule 13(J) comes into play under the facts of this case.

. . .

To the extent T.R. 13(J) is applicable under the facts of this case Khayyata should be able to avail herself of its protection.

*Id.*

*Khayyata* is indistinguishable from the instant case. Like *Khayyata*, the Village responded to the Town's Suit on Account by answer and counterclaim. Also like *Khayyata*, the Village failed to give notice as required by the ITCA. While the Village should have given notice as required by the ITCA, we hold, as we did in *Khayyata*, that the Village should be able to avail itself of the protections under T.R. 13(J), as its counterclaims were compulsory.

The Town's basis for its Suit on Account against the Village were claims, arising out of a contract, for sewage fees from the Village. The Village's counterclaims against the Town were directly related to the Town's claims against it. Moreover, the Village's counterclaims stemmed from the contract between it and the Town. Consequently, we find that the Village's counterclaims arose out of the same transaction or occurrence that was the subject matter of the Town's claims against the Village and did not require, for its adjudication, the presence of third parties of whom the court could not acquire jurisdiction. *See* T.R. 13(A). Thus, we agree with the Village and find that the Village's counterclaims were compulsory and saved under T.R. 13(J).

Accordingly, we find that the Village has made a showing of *prima facie* error. *See Nat'l Oil & Gas, Inc.*, 716 N.E.2d at 497. Therefore, we hold that the trial court erred in granting summary judgment in favor of the Town as to the tort claims, because the Village's counterclaims were compulsory and saved under T.R. 13(J).

### CONCLUSION

Based on the foregoing, we conclude that the trial court erred in granting summary judgment in favor of the Town.

Reversed.

BROOK, C.J., and MATHIAS, J., concur.